**Nos. 20-16176**

_____

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**
_____

ZACHARY SILBERSHER, RELATOR, *Plaintiff-Appellant,*
and
UNITED STATES OF AMERICA ET AL., EX REL., *Plaintiffs,*

v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC.; VALEANT PHARMACEUTICALS INTERNATIONAL; SALIX PHARMACEUTICALS, LTD.; SALIX PHARMACEUTICALS, INC.; DR. FALK PHARMA GMBH, *Defendants-Appellees.*

_____

Appeals from the United States District Court for the Northern District of California Civil Case No. 3:18-cv-01496-JD (Honorable James Donato)

_____

**RESPONSE TO PETITION FOR REHEARING EN BANC**
_____

Nicomedes Sy Herrera
Bret D. Hembd
HERRERA KENNEDY LLP
1300 Clay Street, Suite 600
Oakland, CA 94612
510.422.4700

Tejinder Singh
SPARACINO PLLC
1920 L Street, NW, Suite 835
Washington, DC 20036
202.629.3530

Warren T. Burns
Christopher J. Cormier
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469.904.4550

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

ARGUMENT ............................................................................................ 1

I.   The Panel's Decision Is Consistent With This Court's
     Precedents and the Decisions of Other Circuits ........................... 3

II.  Defendants Vastly Overstate the Significance of the Issues
     They Wish the Court to Consider .................................................. 8

III. Rehearing *En Banc* Would Be Futile Because the Court
     Would Reach the Same Result as the Panel on Multiple
     Grounds ...................................................................................... 10

     A.  The Rule Defendants Criticize Is the Best Reading of the
         Statute ................................................................................. 10

     B.  The Sources Defendants Identify Do Not Constitute
         Qualifying Public Disclosures ............................................. 15

     C.  Even if the Public Disclosure Bar Had Been Triggered,
         Plaintiff Is an Original Source ........................................... 21

CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*A-1 Ambulance Serv., Inc. v. California,*
  202 F.3d 1238 (9th Cir. 2000) ................................................................ 13

*Amphastar Pharms. Inc. v. Aventis Pharma SA,*
  856 F.3d 696 (9th Cir. 2017) .................................................................... 3

*Chamberlin v. Isen,*
  779 F.2d 522 (9th Cir. 1985) .................................................................. 20

*Lear, Inc. v. Adkins,*
  395 U.S. 653 (1969) ................................................................................ 20

*Niz-Chavez v. Garland,*
  141 S. Ct. 1474 (2021) ............................................................. 11, 12, 14

*Schindler Elevator Corp. v. United States ex rel. Kirk,*
  563 U.S. 401 (2011) ................................................................................ 14

*Silbersher v. Valeant Pharms. Int'l, Inc.,*
  76 F.4th 843 (9th Cir. 2023) ........................................................ *passim*

*United States ex rel. Found. Aiding the Elderly v. Horizon W.,*
  265 F.3d 1011 (9th Cir. 2001) .................................................................. 3

*United States ex rel. Mateski v. Raytheon Co.,*
  816 F.3d 565 (9th Cir. 2016) .................................................................... 3

*United States ex rel. Silbersher v. Allergan, Inc.,*
  46 F.4th 991 (9th Cir. 2022) .............................................. 9, 16, 17, 18

*United States v. Am. Bell Tel. Co.,*
  128 U.S. 315 (1888) ................................................................................ 20

*United States v. Cath. Healthcare W.,*
  445 F.3d 1147 (9th Cir. 2006) ................................................................. 9

*United States v. Janssen Biotech, Inc.*,
  576 F. Supp. 3d 212 (D.N.J. 2021)..................................................17, 19

*W. Elec. Co. v. Piezo Tech., Inc.*,
  860 F.2d 428 (Fed. Cir. 1988) ...........................................................20

## Statutes

31 U.S.C. § 3730(c)(2)(A) ........................................................................9

31 U.S.C. § 3730(e)(4)(A)............................................................*passim*

31 U.S.C. § 3730(e)(4)(B)......................................................................21

## Other Authorities

145 Cong. Rec. E1546-01 (daily ed. July 14, 1999)...........................13, 15

Remarks at the USPTO Patent Quality Summit, Hon. Paul R.
  Michel, Former Chief Judge, U.S. Ct. of Appeals for the Fed.
  Circuit (Mar. 25, 2015),
  http://livestream.com/uspto/PatentQualitySummit............................19

# ARGUMENT

Plaintiff Zachary Silbersher alleges that defendants fraudulently obtained an invalid patent enabling them to overcharge the government for an important prescription drug. The fraud comprised multiple misstatements and omissions, and defendants' use of the fraudulent patent to block generic competitors and facilitate overcharging was complex. Silbersher's allegations were not previously publicly disclosed, but data in various sources corroborated some of them. Defendants argued that the False Claims Act's (FCA) public disclosure bar precluded Silbersher's claims.

The panel applied this Court's precedents to hold that scattered public disclosures of facially innocuous information collectively may have revealed some, but not all, of the key facts underlying this action—and thus failed to trigger the public disclosure bar. *Silbersher v. Valeant Pharms. Int'l, Inc.*, 76 F.4th 843, 858 (9th Cir. 2023). To reach that result, the panel applied this Court's precedents to the unusual (and unusually complex) allegations of patent fraud here. Defendants dislike how the Court applied those precedents, but gripes about the application of precedent to uncommon circumstances do not merit rehearing *en banc*.

1

Hoping to make the issues they raise appear bigger and simpler than they actually are, defendants accuse the panel of adopting a new *per se* rule limiting the public disclosure bar to instances in which unlawful transactions were disclosed "entirely within a single source." Pet. 1. The panel did no such thing. Instead, it held that "no public disclosure here, individually **or in combination**, establishes facts from which fraud could be inferred. It is the combination of disclosures and conduct alleged in Silbersher's complaint that bring together the constituent elements of fraud." 76 F.4th at 858 (emphasis added). That clear holding dooms defendants' petition.

Even if defendants had accurately characterized the panel's decision, rehearing should be denied because defendants overstate the importance of the issue they ask the Court to consider—which rarely will even arise, let alone be dispositive. Indeed, even here, the issue is inextricably intertwined with other contested legal determinations, which turn on fact-sensitive applications. Thus, if the Court reheard the case, it would have to resolve multiple additional questions to even reach the issue defendants emphasize. And even if the Court reached that issue and then agreed with defendants' take on it (which it should not), the

Court would ultimately reach the same result as the panel on other grounds. Rehearing would therefore be an exercise in futility for defendants, and a poor use of scarce judicial resources.

## I.  The Panel's Decision Is Consistent With This Court's Precedents and the Decisions of Other Circuits

The panel grounded its analysis in this Court's precedents, including *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir. 2016); *United States ex rel. Foundation Aiding the Elderly v. Horizon West*, 265 F.3d 1011, 1015 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1189 (9th Cir. 2001); and *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696 (9th Cir. 2017). *See* 76 F.4th at 856. The panel explained that under these precedents, for a fraudulent transaction to be disclosed, both "a misrepresented state of facts and a true state of facts" must be disclosed in sources that fall within the public disclosure bar's enumerated channels, such that the fraud's "essential elements" appear in "qualifying disclosures." *Id*. Courts must accordingly "examine the public statements most likely to constitute a transaction and compare them to" the relator's complaint. *Mateski*, 816 F.3d at 573. Courts should not perform this comparison "at a high level of generality"—but instead "at a more granular level." *Id*. at 574.

3

"Applying this framework," the panel "conclude[d] that the qualifying public disclosures here do not disclose a combination of facts sufficient to permit a reasonable inference of fraud." 76 F.4th at 856. Thus, the panel described the elements of Silbersher's claim and explained why the combination of facts included in the public sources identified by defendants did not reasonably support such an inference. *See id.* at 856-57. Defendants criticize parts of the panel's analysis—while ignoring specific holdings that are independently sufficient to support the panel's conclusion.

For example, defendants never discuss the panel's holding that "Silbersher's *qui tam* allegations provide a critical fact necessary for scienter: Falk and Valeant took conflicting positions in their patent prosecutions of the '344 and '688 Patents. Neither of these patent prosecutions, or any other disclosure, reveals that fact." 76 F.4th at 857. Nor do they discuss the panel's conclusion that "none of the qualifying disclosures . . . makes any mention of the Otterbeck Patents, much less disclose anything about the validity of these patents," which is an important part of Silbersher's claim. *Id*. Indeed, numerous additional material facts were not in any qualifying disclosure. *See, e.g.*, 2-ER-167-

9, ¶¶ 91-98 (defendants' withholding of known drug interactions for similar chemical compounds); 2-ER-174-6, ¶¶ 117-24 (describing how defendants excluded generic competitors using the fraudulent patent). Because the public disclosure bar is only triggered when *all* of the fraudulent transactions were disclosed, these non-disclosures each independently defeat the defense. Defendants fail to acknowledge, much less grapple with, any of them.

Defendants nevertheless protest that the panel analyzed certain disclosures in isolation, not collectively. *See* Pet. 9-10. This criticism is misguided. To be sure, the panel methodically considered each asserted qualifying disclosure, explaining what it disclosed and what it did not. *See* 76 F.4th at 856-57. But that was not error; it was careful legal analysis that laid out the relevant facts *before* considering their collective import. Ultimately, after setting the table, the panel concluded that the public disclosures did not, "individually or in combination, establish[] facts from which fraud could be inferred." 76 F.4th at 858. Defendants ignore that statement—but it is the panel's actual holding—and shows that the Court considered the public disclosures together, just as defendants urge.

5

The facts and procedural posture also make this case a bad candidate for *en banc* review. The district court accepted defendants' argument that the transactions were disclosed in an inter partes review (IPR) proceeding challenging defendants' patent. *See* 76 F.4th at 852. The panel correctly held that the IPR here was not a qualifying disclosure. *Id.* at 854-55. Defendants barely challenge that holding, *see* Pet. 15-17, likely because whether IPRs fall within one of the public disclosure bar's enumerated channels is such a niche and technical issue that it obviously does not merit the full Court's attention, and the panel's holding in that regard was clearly correct. *See* Part III.B.1, *infra*. Instead, defendants now scramble for second-best alternative arguments for affirmance. But those arguments are underdeveloped. Indeed, defendants themselves argue that the main issue they want the Court to consider was not fully briefed.

Defendants' alternative arguments are also fact-bound and weak. For example, Silbersher alleges that defendants intentionally withheld two scientific studies from the patent office that would have shown the obviousness of defendants' claimed invention. 2-ER-146, ¶¶ 10-11. Defendants argued that this alleged withholding was publicly disclosed

because if you examine the record of the patent prosecution docket, you won't see the studies mentioned anywhere; and if you read enough issues of the journal *Alimentary Pharmacology & Therapeutics*, you might notice these studies exist and that scientists associated with defendants took part in them (suggesting that defendants knew about them). 2-ER-35. Such claims of disclosure-by-omission are unusual, and distinguish this case from others involving clear public disclosures of affirmative misrepresentations.

Defendants' contention is also weak. The panel rejected it, 76 F.4th at 857, and rightly so because the first part of the asserted "disclosure" is merely an omission (which is effectively invisible unless you already know to look for it); and the second part assumes familiarity with a pair of facially innocuous, incredibly dense scientific studies buried in issues of an esoteric pharmacology journal published two years apart. To say that such oblique "disclosures" (if we can even call them that) revealed defendants' fraud is untenable under this Court's precedents.

The bottom line is that rehearing should be denied because the panel stated that it was "[a]pplying [the] framework" set forth by this Court's precedents, 76 F.4th at 856, and did so by performing a fact-

intensive comparison between the public disclosures and Silbersher's allegations. Defendants' claims that the panel overturned or ignored those precedents are wrong, and their claimed circuit split is illusory. Instead, the panel applied this Court's precedents in ways that respect those decisions and helpfully clarify their application to the unusual factual context of patent fraud.

## II. Defendants Vastly Overstate the Significance of the Issues They Wish the Court to Consider

Even if defendants had correctly described the panel's holding, rehearing would not be warranted because the single-source issue defendants emphasize arises only infrequently, and rarely will be dispositive. The issue can only ever arise in FCA cases where *all* of the following conditions are met: (1) the government declines to intervene; (2) the plaintiff chooses to carry the case forward; (3) the allegations were not publicly disclosed (because disclosures of allegations will always be in a single source); and (4) the alleged transactions were disclosed across multiple sources. The issue is dispositive only if three additional conditions are met: (5) the plaintiff is not an "original source" who may proceed even if the public disclosure bar has been triggered, 31 U.S.C. § 3730(e)(4)(A); (6) the government does not seek to dismiss the case on

its own initiative, *id*. § 3730(c)(2)(A), and (7) the plaintiff's complaint is otherwise valid. Defendants never attempt to quantify that universe, but it comprises a tiny subset of FCA cases not important enough to warrant the *en banc* Court's review.

Defendants also overstate the asserted conflict between a single-source disclosure rule and other precedent. This Court's precedents have not expressly held that transactions may be disclosed across multiple sources; instead, they have only "assume[d] that the elements of the fraud allegation need not have been made public in a single document," *United States v. Cath. Healthcare W.*, 445 F.3d 1147, 1151 n.1 (9th Cir. 2006), or perhaps addressed the issue implicitly. But defendants have not cited a published decision in which the single-source argument was considered and rejected on the merits. It is especially odd for defendants to cite *United States ex rel. Silbersher v. Allergan, Inc.*, 46 F.4th 991 (9th Cir. 2022), for that proposition because *Allergan* declined to consider this question. *Id*. at 996 n.6.

Defendants correctly state that some out-of-circuit precedents have held that disclosures across multiple sources can trigger the public disclosure bar. Pet. 11-12. But only a handful of the cases defendants cite

9

address this issue expressly—and then only briefly, without analyzing the statutory text or citing Supreme Court precedent. These cases are therefore weak authority—and so even assuming the panel adopted a single-source rule for all cases (it didn't), the Court should not take the extraordinary step of granting rehearing *en banc* just to tiptoe around some nonbinding, conclusory determinations.

### III. Rehearing *En Banc* Would Be Futile Because the Court Would Reach the Same Result as the Panel on Multiple Grounds

Even if we pretend that defendants correctly described the panel decision as creating a *per se* single-source rule, and even if the Court determined that this issue was sufficiently weighty to warrant further review, rehearing would be futile because the panel reached the correct result for three independent reasons.

#### A. The Rule Defendants Criticize Is the Best Reading of the Statute

The FCA provides that the public disclosure bar is triggered when "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . in *a* congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4)(A)(ii) (emphasis added).

Here, no single source disclosed defendants' fraud; but defendants assert, incorrectly, that fraud could be reasonably inferred from disjointed information scattered throughout different federal hearings, *i.e.*, multiple patent prosecutions relating to separate applications. That contention is disputed (indeed, the panel rejected it). But in any event, Congress's use of the word "in" (meaning "within") followed by the singular article "a" indicates that allegations or transactions must be disclosed within *a* single hearing.

Recent Supreme Court precedent confirms this reading. In *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021), the Court held that when serving "a notice to appear" on a deportable alien, the government must serve the relevant information in a single document, not spread over multiple documents. *See id.* at 1486. The Court explained that "[t]o an ordinary reader . . . 'a' notice would seem to suggest just that: 'a' single document containing the required information, not a mishmash of pieces with some assembly required." *Id.* at 1480. The Court elaborated that when Congress uses a singular article before a countable noun (like a notice, or a hearing), Congress ordinarily means to refer to a singular item. *Id.* at 1481-82. The Court also rejected countervailing policy

arguments, explaining that "there are (at least) two sides to the policy questions before us . . . and no amount of policy-talk can overcome a plain statutory command." *Id.* at 1486.

The Supreme Court's holding applies equally here. A hearing, like a notice, is a countable noun—and Congress placed a singular article before it. Had Congress wished, it could easily have used plurals or other language making it clear that the public disclosure bar applies to transactions sprinkled across multiple hearings. But Congress didn't; instead, it defined this channel of public disclosure using plain language that is exclusively singular. It follows that a transaction must be disclosed in a single hearing—"not a mishmash of [hearings] with some assembly required." *Niz-Chavez*, 141 S. Ct. at 1480.

The statutory context does not justify deviating from the plain text's ordinary meaning. As Senator Grassley explained, when Congress added the public disclosure bar to the statute, its intent was only to "preclude qui tam cases that merely repackage allegations the government can be presumed already to know about because they were disclosed publicly either in *a* federal proceeding or in the news media"; it was not to bar claims by relators who "must piece together facts exposing a fraud from

separate documents." 145 Cong. Rec. E1546-01 (daily ed. July 14, 1999), 1999 WL 495861, at *E1546-47 (emphasis added). That makes sense because federal authorities cannot reasonably be expected to spot contradictions between facially innocuous statements buried within disparate sources.

Defendants argue that a single-source rule would be unworkable because courts would find it hard to determine what constitutes a single "disclosure." Pet. 13-15. This is a red herring: Nobody has to figure out what constitutes a single "disclosure" because that word doesn't appear in the operative statutory text. Instead, to interpret the first channel, courts only have to determine what constitutes a "hearing," 31 U.S.C. § 3730(e)(4)(A)(i); and to interpret the second, courts need only determine what constitutes a "report, hearing, audit, or investigation," *id*. § 3730(e)(4)(A)(ii). That is feasible, and indeed this Court has done it. *See, e.g.*, *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1244 (9th Cir. 2000) (interpreting the word "hearing") (citation omitted).

Defendants' attempts to kick dust around the statutory text are unpersuasive. Defendants do not argue that "report, hearing, audit, or investigation" are uncountable or impossible to interpret. Instead,

13

defendants say that in certain hypothetical cases, it may be intuitively odd for the public disclosure bar to be triggered (or not). For example, defendants assert it would be anomalous for a relator who obtains information about multiple patent prosecutions via a single FOIA response to find his claim barred, but not a relator who obtains the same information from multiple docket searches. Pet. 13-14. But the Supreme Court has dismissed indistinguishable concerns. In *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 414 (2011), a party argued that "it would be strange that two relators could obtain copies of the same document but that only the relator who got the document in response to a FOIA request would find his case barred." The Court was "not troubled by the different treatment" because "[b]y its plain terms, the public disclosure bar applies to some methods of public disclosure and not to others." *Id*. Thus, defendants' arguments are mere "policy-talk," which cannot "overcome a plain statutory command." *Niz-Chavez*, 141 S. Ct. at 1486.

Defendants make an even more naked (and misguided) policy argument when they contend that a single-source rule would improperly expand FCA liability. Pet. 14-15. This is irrelevant to the textual debate

and wrong to boot. As Senator Grassley explained, Congress wanted relators who used "their education, training, experience, or talent to uncover a fraudulent scheme from publicly available documents . . . to file a qui tam action." 1999 WL 495861, at *E1547 (footnote omitted). "If, absent the relator's ability to understand a fraudulent scheme, the fraud would go undetected, then we should reward relators who with their talent and energy come forward with allegations and file a qui tam suit. This is especially true where a relator must piece together facts exposing a fraud from separate documents." *Id*. Regardless, liability will only ever attach if the defendant defrauded the government. Defendants cannot explain why it would be good policy to construe the statute to shield such misconduct from a civil remedy. Thus, if the Court reaches this question, it should hold that a single-source rule is the best reading of the statute. Defendants never argue they could prevail under that rule.

## B. The Sources Defendants Identify Do Not Constitute Qualifying Public Disclosures

Defendants' public disclosure defense rests on the premise that three sources constitute qualifying disclosures: (1) IPR proceedings challenging the validity of defendants' patents (which the panel rejected); (2) the patent prosecution histories of the fraudulently obtained patents

(which the district court never considered, but the panel accepted as qualifying disclosures); and (3) scientific studies that defendants withheld from the patent office (which the panel assumed without deciding were qualifying disclosures). If the Court hears this case *en banc*, it should hold that none of these sources qualify, and reach the same result as the panel.

1. As the panel explained, IPR constitutes an "administrative hearing," *see* 76 F.4th at 855; and disclosures therein can trigger the public disclosure bar only if "the Government or its agent [was] a party" to it—which the government was not. 31 U.S.C. § 3730(e)(4)(A)(i). Defendants halfheartedly argue that this holding conflicts with *Allergan* (Pet. 15-16)*, but *Allergan* did not consider IPRs at all—and as the panel here explained, its holding regarding IPRs follows directly from *Allergan*'s construction of the public disclosure bar. *See* 76 F.4th at 855.

Although defendants now argue that the government was a party to the IPR, they forfeited that argument in the district court, 1-ER-16. The panel also correctly rejected it on the merits because the government is an adjudicator of IPRs, and not a protagonist in them, which is what the word "party" means in this context, 76 F.4th at 854-55. If the Court

rehears this case *en banc*, it should reach the same conclusion for the reasons explained by the panel, in Silbersher's briefs (1st Br. 42-52; 3d Br.17-34), and in *United States v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 224-25 (D.N.J. 2021), *motion to certify appeal denied*, 2022 WL 225475 (D.N.J. Jan. 26, 2022).

2. Independently, the Court should reject the notion that patent prosecutions can constitute public disclosures even when the government was not a party to them. After this case was briefed and argued, a panel of this Court held otherwise in *Allergan*. The panel here followed that precedent. *See* 76 F.4th at 852-54.

*Allergan* was wrong on this point. As *Allergan* correctly acknowledged, "[a] patent prosecution is an administrative hearing." 46 F.4th at 997. Such hearings are covered by the *first* channel in the public disclosure bar, which addresses disclosures in "in a Federal criminal, civil, or ***administrative hearing*** in which the Government or its agent is a party." 31 U.S.C. § 3730(e)(4)(A)(i) (emphasis added). The patent prosecutions here fail that test because the government was not a party to them. Nobody has argued otherwise.

*Allergan* nevertheless held that patent prosecutions fall within the public disclosure bar's second channel, which encompasses disclosures "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation," and does not require that the government be a party. 31 U.S.C. § 3730(e)(4)(A)(ii). As the *Allergan* panel understood it, "hearing" in the first channel refers to adversarial hearings, while "hearing" in the second channel refers to "information-obtaining" hearings—and patent prosecutions fall within that second category. 46 F.4th at 998.

Respectfully, that holding was wrong at least twice over. First, it required the court to add words to the statute that Congress never included (*e.g.*, appending "adversarial" to the first channel and "information-obtaining" to the second), while ignoring what Congress actually did when it amended the statute in 2010 (*e.g.*, including "administrative hearings" in the first channel and removing that same language from the second).

Under the correct reading of the statute, *every* administrative hearing is addressed *only* by the first channel, and is therefore subject to the government-party requirement. The second channel addresses a

18

residual category of "other" federal hearings, including congressional hearings, GAO hearings, and every other federal hearing that is *not* a criminal, civil, or administrative hearing. 31 U.S.C. § 3730(e)(4)(A)(ii). Because patent prosecutions fall within the first channel, they only count insofar as the government is party. *See Janssen*, 576 F. Supp. 3d at 225-26 (holding as much).

Second, *Allergan* erred by classifying patent prosecution as information-gathering. Patent prosecution is where a government decision-maker, *i.e.*, a patent examiner, adjudicates an applicant's claim for legal relief; it is not information-gathering like a congressional or GAO hearing. Thus, former Federal Circuit Chief Judge Michel explained that "patent examination" is "a process for making a legal judgment based on technological documents," and so "a patent examiner first and foremost is an adjudicator"; as much so "as an administrative patent judge, or a district judge in the federal courts, or a Federal Circuit judge, or a Supreme Court Justice." Remarks at the USPTO Patent Quality Summit, Hon. Paul R. Michel, Former Chief Judge, U.S. Ct. of Appeals for the Fed. Circuit at 1:31 (Mar. 25, 2015), http://livestream.com/uspto/PatentQualitySummit. Controlling case law

agrees. *See, e.g.*, *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) ("A patent . . . simply represents a legal conclusion reached by the Patent Office."); *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 363 (1888) ("The patent . . . is the result of a course of proceeding, quasi judicial in its character."); *Chamberlin v. Isen*, 779 F.2d 522, 524 (9th Cir. 1985) (patent examiners "perform a 'quasi-judicial' function"); *W. Elec. Co. v. Piezo Tech., Inc.*, 860 F.2d 428, 431 (Fed. Cir. 1988) (similar). Thus, even assuming some information-gathering administrative hearings fall in the second channel, patent prosecutions do not. They are adjudicative proceedings covered only by the first channel.

3. The panel assumed without deciding that two studies published years apart in different issues of *Alimentary Pharmacology & Therapeutics* constitute "the news media." *See* 76 F.4th at 855. If this Court rehears the case, it should hold otherwise. As the briefing explains, the phrase "the news media" is undefined, and takes its ordinary meaning. 1st Br. 55-59; 3d Br. 41-43. That meaning refers to professionals who report current events for a living—and not to sporadic publications in scholarly journals about the hepato-biliary system describing niche scientific studies. *Id.*

20

These studies are critical because defendants withheld them to obtain a fraudulent patent. 2-ER-146, ¶ 10. The only sense in which this fraudulent omission was even arguably "disclosed" is that the withheld studies exist in different issues of *Alimentary Pharmacology & Therapeutics*. Therefore, if the studies are not "from the news media," a critical element of the fraud was never even arguably disclosed within a qualifying channel.

If the Court agrees that *any* of these sources fall outside the enumerated channels, the public disclosure bar has not been triggered.

## C. Even if the Public Disclosure Bar Had Been Triggered, Plaintiff Is an Original Source

The public disclosure bar warrants dismissal only if the plaintiff is not "an original source of the information" in his complaint. 31 U.S.C. § 3730(e)(4)(A). Defendants' petition is limited to arguing that the public disclosure bar was triggered. But even if the Court held as much, it would not matter because Silbersher qualifies as an original source.

The original source analysis turns on what the Court ultimately determines was publicly disclosed because the Court must determine whether Silbersher's additional knowledge is "independent of" and "materially adds to" those disclosures. 31 U.S.C. § 3730(e)(4)(B).

Silbersher's briefs lay out each potential scenario and explain that no matter what the Court deems publicly disclosed, Silbersher is an original source. 1st Br. 64-72; 3d Br. 43-45. Defendants' petition ignores this facet of the case altogether—but it provides yet another reason to deny rehearing, because even if the Court agreed with defendants on every other point, it should still reach the same result as the panel.

# CONCLUSION

Rehearing should be denied.

Respectfully submitted,

*s/ Tejinder Singh*

Tejinder Singh
SPARACINO PLLC
1920 L St. NW, Suite 835
Washington, DC 20036
202.629.3530
tejinder@spracinopllc.com

Nicomedes Sy Herrera
Bret D. Hembd
HERRERA KENNEDY LLP
1300 Clay Street, Suite 600
Oakland, CA 94612
510.422.4700
NHerrera@HerreraKennedy.com
BHembd@HerreraKennedy.com

Warren T. Burns
Christopher J. Cormier
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
469.904.4550
WBurns@BurnsCharest.com
CCormier@BurnsCharest.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 20-16176

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4190 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Tejinder Singh | **Date** | 10/25/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2021*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Response to the Petition for Rehearing En Banc to be filed using the Court's CM/ECF system on October 25, 2023. All counsel to parties to the case are ECF users.

s/Tejinder Singh

October 25, 2023